# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Jacksonville Division

### Case No. 3:09-cv-403-J-34 JRK

| | |
|---|---|
| JOY PERRY, doing business as | ) |
| FREEDOM THROUGH CHRIST | ) |
| PRISON MINISTRY and PRISON | ) |
| PEN PALS, and | ) |
| WRITEAPRISONER.COM, INC., | ) |
| a Florida corporation, | ) |
| | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BARRY REDDISH, in his official capacity | ) |
| as Warden at Union Correctional Institution, | ) |
| STEVEN SINGER, in his official capacity | ) |
| as Warden at Florida State Prison, KIM | ) |
| SOUTHERLAND, in her official capacity | ) |
| as Warden at the Lowell Correctional | ) |
| Institution, and WALTER A. McNEIL, | ) |
| in his official capacity as Secretary of the | ) |
| Florida Department of Corrections, | ) |
| | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

### Introduction

Plaintiff, Joy Perry, doing business as "Freedom Through Christ Prison Ministry" and "Prison

Pen Pals," and, Plaintiff, WriteAPrisoner.com, Inc., bring this lawsuit pursuant to 42 U.S.C. § 1983,

the Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA"), and the Florida

Religious Freedom Restoration Act of 1998 (hereinafter "FRFRA") to enjoin Defendant officials of

the Florida Department of Corrections (hereinafter "FDOC") from banning, in violation of the First

and Fourteenth Amendments to the U.S. Constitution, the receipt by inmates of Plaintiffs' written

materials pertaining to the posting of solicitations for religious pen pals and pen pals for other lawful

purposes, for censoring inmates who write the Plaintiffs desirous of using their services to solicit

religious pen pals and pen pals for other lawful purposes, and for substantially burdening Mrs.

Perry's prison ministry program and making it impossible to carry out her ministry and religious

calling, thereby violating the First and Fourteenth Amendments and RLUIPA.

Plaintiffs also seek to enjoin the FDOC from threatening to subject inmates to disciplinary

action who post pen pal solicitations through Plaintiffs' pen pal services, because such punishment

has infringed on Plaintiffs' services, has caused Plaintiffs extra expense and to lose revenue, and in

the case of plaintiff Perry, has infringed on and unduly burdened her prison ministry to inmates.

Plaintiffs also seek a declaratory judgment that Rule § 33-210.101(9), F.A.C., is unconstitutional,

on its face and as applied, because it is used by Defendants to justify the prohibition of the Plaintiffs

from sending literature regarding their services to inmates, and it is likewise used to ban the receipt

and sending of mail to post solicitations for religious pen pals and for pen pals for other lawful

purposes which has adversely affected the Plaintiffs' respective services to Florida's inmates.

Defendants have moved to dismiss Count III brought pursuant to RLUIPA asserting two

arguments: (1) plaintiff Perry has no statutory authority to bring a claim under RLUIPA and (2)

plaintiff Perry lacks standing to bring a RLUIPA claim on behalf of a third party.  (D.E. 28).

Because Defendants' Motion fails to establish with certainty that plaintiff Perry would not be entitled

to relief under any set of facts that could be proven to support Count III, the Court should deny the

-2-

Motion to Dismiss.

## Statement of Facts[1]

Plaintiff, Joy Perry, is a resident of Ft. Lauderdale, Florida.  (Compl. ¶ 9).[2]  Mrs. Perry established "Freedom Through Christ Prison Ministry" in 1980.  (Compl. ¶ 24).  This organization matches inmates seeking religious guidance through pen pal correspondence with free world persons and churches.  (Compl. ¶ 24).  A religious pen pal relationship can help prisoners establish sincere faith and cope with prison life.  (Compl. ¶ 22).  Many inmates find that a religious experience with a pen pal can play an integral role in their rehabilitation and transition out of incarceration.  (Compl. ¶ 22).  While finding a pen pal to correspond with can be difficult, Mrs. Perry's pen pal prison ministry helps free world persons and churches reach thousands of lonely prisoners who desire to hear and learn about the Gospel of Jesus Christ without leaving one's home.  (Compl. ¶ 24).  An inmate can send a letter to Mrs. Perry, directed to "Freedom Through Christ Prison Ministry," indicating that they are interested in being matched with a religious pen pal.  (Compl. ¶ 24).  From there, Mrs. Perry will send the inmate a letter with information about the pen pal exchange and include a list of persons of faith and churches who have agreed to serve as religious pen pals.  (Compl. ¶ 9).  There is no charge for Mrs. Perry's service and ministry.  (Compl. ¶ 9).

Prior to the adoption of Rule § 33-210.101(9), F.A.C. (hereinafter "the Rule"), Mrs. Perry had marketed her religious services to, and received and hosted pen pal prison ministry solicitations from, FDOC inmates without any incident whatsoever.  (Compl. ¶ 29).  The challenged Rule, however, bans inmates from using correspondence privileges to solicit or advertise for pen pals.

---

[1]Plaintiff Perry's Statement of Facts pertinent to Count III.

[2]"Compl." refers to the First Amended Complaint (D.E. 26).

-3-

(Compl. ¶ 30).  By enacting and enforcing this Rule, Defendants have caused great harm to Mrs. Perry's ministry.  The Rule has directly impacted and substantially burdened Mrs. Perry's ministry by limiting her ability to locate inmates who would like to take advantage of Mrs. Perry's religious services.  (Compl. ¶ 33).  Additionally, the Rule has substantially burdened the religious exercise of inmates who seek religious counsel through pen pals from Mrs. Perry's prison pen pal ministry. (Compl. ¶ 33).

There is not a valid, rational connection between the Rule enacted to bar pen pal solicitation and any legitimate governmental interest put forward to attempt to justify it.  (Compl. ¶ 38).  Mrs. Perry had been ministering to inmates since 1980 without incident.  (Compl. ¶ 24).  Additionally, there are no alternative means of exercising the right to receive and solicit religious pen pals as a result of the prohibitions set forth by the Rule. (Compl.¶ 39).  Defendants' enactment and enforcement of the challenged Rule essentially enjoins Mrs. Perry ability to carry out her religious prison pen pal ministry.  (Compl. ¶ 52).

### Standard of Review for a Motion to Dismiss

Courts view Rule 12(b)(6) motions with disfavor.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir.1997) (citing Madison v. Purdy, 410 F.2d 99, 100 (5th Cir.1969)) ([A dismissal under Rule 12(b)(6)] "is viewed with disfavor and rarely granted.'").  A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief.  Fed. R. Civ. 12(b)(6).  When considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff.  *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008).  Additionally, when considering a motion to dismiss the court should consider the plaintiff's allegations as true. *Cruz v. Beto*, 405 U.S. 319, 321 (1972).

-4-

"It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed. R. Civ. 12(b)(6) 'unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts that would entitle him to relief.'" *Bradbury v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986) (quoting *Conley*, 355 U.S. 41, 45-46). "[C]ourts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir.2003) (quoting Fed. R. Civ. P. 8(a)). The issue on a motion to dismiss is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (internal citations omitted). If a defect can be cured by amendment, leave to amend should be freely granted. *Forman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15.

### Argument and Memorandum of Law

I.  **Mrs. Perry, Doing Business as "Freedom Through Christ Prison Ministry," as Alleged in Count III, Meets the Constitutional Requirements of Standing to Bring a RLUIPA Claim**

Defendants' contention that Mrs. Perry, doing business as "Freedom Through Christ Prison Ministry" in Count III, has no statutory authority to be a RLUIPA claimant is without merit. The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a), in relevant part, provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and

> (2) is the least restrictive means of furthering that compelling governmental interest.

RLUIPA does not state, as Defendants contend, that the only person who can bring a claim alleging a violation of one's religious exercise in the prison context is an institutionalized person. To the contrary, RLUIPA is completely absent of any such limiting language. The issue for this court to decide is whether Mrs. Perry, doing business as "Freedom Through Christ Prison Ministry" as alleged in the Statement of Facts and Count III, has standing to bring a RLUIPA claim. Defendants' Motion is unjustifiably absent of any discussion of the broad standing language set forth in the RLUIPA. For it is in the Act itself where one should begin any analysis of who has statutory authority and standing to bring a RLUIPA claim.

It is clear from the language of the Act itself that Congress intended for RLUIPA litigants such as Mrs. Perry to be broadly granted standing. In enacting RLUIPA, Congress boldly stated that "standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution." 42 U.S.C. § 2000cc-2(a). Congress further stated that RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Chapter and the Constitution." 42 U.S.C. § 2000cc-3(g). Thus, the broad standing provisions of RLUIPA indicate that Congress intended to confer standing to litigants who satisfy the constitutional requirements of Article III, without requiring more. *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103 (1979) (discussing that where Congress intends standing to the full limits of Article III, the normal prudential rules do not apply).

There is certainly no suggestion, either in the plain language of the Act or its legislative

history, that Congress intended to limit claimants to only institutionalized persons. Nor is there any indication in the legislation or legislative history that non-prisoners would not have standing to assert a RLUIPA claim just as Mrs. Perry has asserted here. In fact, the Statute clearly defines a RLUIPA claimant as "a person raising a claim or defense under the Act." 42 U.S.C. § 2000cc-5(1). If Congress had wanted to limit a RLUIPA claimant in the prison context to only an institutionalized person as Defendants suggest, it could have easily stated as such. It did not.

The Supreme Court has noted that, "[w]here statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154 (1970). Additionally, the legislative history of RLUIPA reveals that its sponsors intended courts to apply a strict scrutiny standard to prison regulations and to "protect sincere faith and worship, recognizing it's [sic] indispensable role in the rehabilitation process." Senator Edward Kennedy, *Statements of Introduced Bills and Joint Resolutions*, S. Doc. No. 6689, 106th Cong. (July 13, 2000).

Defendants' Motion to Dismiss (D.E. 28 at p. 4) cites to a Harvard Journal of Law and Public Policy article for the proposition that because RLUIPA states that the Prison Litigation Reform Act of 1995 (PLRA) applies to RLUIPA, that only institutionalized persons may bring claims. The fact that the PLRA applies to RLUIPA (42 U.S.C. § 2000cc-2(e)) simply means that when a prisoner plaintiff brings a claim under RLUIPA, the PLRA requirements still apply to that prisoner claimant. But, just because the PLRA applies to a prisoner RLUIPA claimant does not mean that RLUIPA is only limited to prisoner claimants. In fact, Defendants failed to inform this Court that the exact same Harvard Journal of Law and Public Policy article cited by Defendants goes on to state that "[l]astly, RLUIPA was seen as a way to remove state imposed barriers from those seeking to minster to

prisoners.  Clergymen and prisoner rights advocates repeatedly voiced their concerns that in the absence of such federal law, they would lack the leverage to compel prison administrators to allow them to conduct their ministries effectively..." Derek L. Gaubatz, *RLUIPA at Four: Evaluating the Success and Constitutionality of RLUIPA's Prisoner Provisions*, 28 Harv.J.L. & Pub. Pol'y 501, 511-12 n. 44 (2005).  Thus, Mrs. Perry is precisely the type of religious person intended by Congress to benefit by the passage of RLUIPA to provide her with leverage over prison administrators such as the very Defendants at bar.

Since standing under RLUIPA is governed only by the constitutional requirements of Article III, plaintiff Perry enjoys standing to bring a RLUIPA claim if three requirements are met.  First, Mrs. Perry must have suffered an injury in fact.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  Second, there must be a causal connection between Mrs. Perry's injury and the conduct complained of.  *Id*.  Third, it must be likely, as opposed to merely speculative, that Mrs. Perry's injury will be redressed by a favorable decision.  *Id*.  This section will address why plaintiff Perry's claim has met all three requirements.

### A.   Mrs. Perry Has Suffered an Injury in Fact and Has a Legally Protected Interest under RLUIPA

In order to enjoy Article III standing, a plaintiff must have first "suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent', not 'conjectural' or 'hypothetical.'" *Id. (citations omitted)*.  Under this definition, plaintiff Perry has clearly suffered an injury in fact.  Her actual, concrete and legally protected interest in practicing her religion by writing to inmates and connecting inmates to willing churches for religious and spiritual guidance has been substantially burdened by the challenged Rule.

-8-

Indeed, the protection of such religious expression and exercise in an institutionalized setting is the exact goal and purpose of RLUIPA. Senator Orrin Hatch, *Statements of Introduced Bills and Joint Resolutions*, S. Doc. No. 6688, 106th Cong. (July 13, 2000). In bringing this challenge, plaintiff Perry seeks to protect not only her religious freedoms, but also to challenge a government regulation limiting the free exercise of religion in an institutional setting. Plaintiff Perry's prison ministry, "Freedom Through Christ Prison Ministry," seeks to facilitate the rehabilitation process and assist inmates with the free exercise of their religion by providing religious counsel and prayer partners through mail correspondence. Her ministry and free exercise of religion therefore takes place in an institutional setting and has been violated by the Defendants in enacting the challenged Rule.

Defendants' reliance in their Motion to Dismiss to a non-institutionalized plaintiff from *McCollum v. State of California*, No. C 04-03339 CRB, 2006 WL 2263912 (N.D. Cal. Aug. 08, 2006) is distinguishable. For starters, *McCollum* is on appeal to the United States Court of Appeals for the 9th Circuit. Case No. 09-16404. In *McCollum*, a Wiccan clergy member brought suit under RLUIPA alleging that his religion was being discriminated against because the California Department of Corrections and Rehabilitation refused to hire him and pay clergy members outside of the "Five Faiths." *Id.* at *1. The court dismissed McCollum's claim for lack of standing without any real analysis of the Act and without <u>any</u> exploration of standing or the legislative purpose of RLUIPA.

Unlike Mrs. Perry, the injury McCollum claimed to have suffered was his inability to get a paid chaplain's position with the California Department of Corrections and Rehabilitation. Mrs. Perry's claim, however, focuses on her inability to exercise her religious freedoms by ministering

to institutionalized persons; such religious exercise is expressly provided for in the Act. 42 U.S.C. § 2000cc-1. In its opinion, the court in *McCollum* also noted that the Defendant's conduct did not prohibit Plaintiff's religious exercise outside of prison gates. Mrs. Perry, however, exercises her religious freedom by soliciting inmates within the gates of the prison and the government imposed regulation at issue has imposed more than a substantial burden on that religious exercise . In short, it has shut her down. Another important distinction between Mrs. Perry and McCollum is that the court found McCollum failed to assert his own free exercise rights, and only alleged a violation of the inmates' free exercise rights. The court noted that the plain language of RLUIPA requires the claimant to show a violation of his/her constitutional rights, which the Plaintiff in *McCollum* did not do. Mrs. Perry, unlike McCollum, has alleged violations of both her free exercise rights, the free exercise rights of the inmates that she ministers to, and the free exercise rights of the churches which her ministry facilitates to become religious pen pals to inmates.

Courts in other instances have similarly granted non-prisoners standing to bring claims under other statutes which were silent on whether, like here, a non-prisoner had standing to bring a claim to enforce a statute in the prison context. *e.g.*, *Fulton v. Goord*, __ F.3d __, 2009 WL 4911940 (2nd Circuit December 22, 2009); *Niece v. Fitzner*, 922 F. Supp. 1208 (E.D. Mich. 1996) (non-prisoner deaf person found to have standing under the Americans with Disabilities Act and Rehabilitation Act to challenge a prison's failure to provide a Telecommunications Device (TDD) for her deaf prisoner fiancé). In the very recently decided case, *Fulton v. Goord*, a non-prisoner wife of inmate with multiple sclerosis brought an Americans with Disabilities Act and Rehabilitation Act claim against New York State Department of Corrections' officials, wherein Mrs. Fulton alleged her rights had been violated as a result of the Department's failure to accommodate her disability by either

-10-

transferring her incarcerated husband to a facility that she could access or routinely transporting her husband to such a facility for purposes of visitation.  2009 WL 4911940 (2nd Circuit 2009).  Like here, the prison authorities moved to dismiss on standing grounds, arguing that Mrs. Fulton did not have an injury in fact, as the protected liberty interest in receiving visitors is solely the inmate's interest and does not extend to their spouses; the lower court agreed.  *Id.* at *3; *Fulton v. Goord*, 2006 WL 2850601 at *2 (N.D. N.Y. 2006) (overruled by *Fulton*, 2009 WL 4911940).  The Second Circuit overruled the lower court's decision, and reasoned that Mrs. Fulton's injury in fact occurred when the Department's infringement of Mr. Fulton's liberty interest in receiving visitors came as a result of the Department's failure to accommodate Mrs. Fulton's disability, whereby injuring Mrs. Fulton's right to be free from disability-based discrimination.  *Fulton*, 2009 WL 4911940 at *3. Here, Ms. Perry's injury in fact comes as result of the FDOC's Rule, which, while substantially burdening the rights of institutionalized persons by preventing them from receiving Ms. Perry's religious teachings, also substantially burdens Ms. Perry's right to practice her religion by writing to inmates and connecting inmates to willing churches for religious and spiritual guidance.

The Supreme Court has also liberalized standing requirements in other, non-prison situations where, like here, the statute is silent as to who may bring a claim but where Congress expanded standing in the legislation itself.  For example, the Court found standing and injury for rental "testers" who brought claims of racial discrimination in housing cases even though the testers were not actually going to rent or purchase the housing.  *Gladstone Realtors*, 441 U.S. at 100.  "Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one 'who otherwise would be barred by prudential standing rules.'"  *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Clearly, if housing testers have injury and standing even though they have

no intention to live in the housing, Mrs. Perry certainly has suffered an injury in fact sufficient to give her standing to assert a RLUIPA claim.

### B.  Plaintiff Perry's Injury is Traceable to Defendants' Challenged Conduct Rule

The second requirement for Article III standing requires that there must be a causal connection between the injury and the conduct complained of.  *Lujan,* 504 U.S. at 560.  The injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.

Instructive here is the Court's decision in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, where a developer of low-income housing and one of its putative tenants were found to have standing to challenge exclusionary zoning practices.  429 U.S. 252 (1977).  In *Village of Arlington Heights*, a developer had contracted to buy property contingent upon its rezoning for multiple family use and filed a properly documented rezoning application.  *Id*. at 256-9.  When the city denied the rezoning application, the developer sued.  *Id*.  Although financing for the project was uncertain, the Court held that the developer had suffered an injury which was traceable to the challenged action of the defendant because the challenged action stood as an absolute barrier to the developer's construction efforts.  *Id*. at 261.  The individual plaintiff alleged that he would seek and qualify for housing in the proposed development in order to move closer to his job. *Id*.  Finding that the city's action frustrated the individual plaintiff's specific plan and that an injunction would create at least a "substantial possibility" of development, the Court concluded that he too had standing.  *Id.* at 261-2.

As in *Village of Arlington Heights*, the Defendant's challenged Rule stands as an absolute barrier to Mrs. Perry's ability to minster to institutionalized persons via pen pal solicitations and to

match prisoners with persons of faith and churches for religious and spiritual guidance.  This injury

suffered by Mrs. Perry is the direct result of the Defendants' adoption of the challenged Rule.

### C.  Plaintiff Perry's Injury is Likely to be Redressed by a Favorable Ruling

In order for a plaintiff to have standing, a court must be able to redress plaintiffs' alleged

injury.  *Lujan*, 504 U.S. at 560.  A plaintiff meets the redressability test if it is likely that the injury

will be redressed by a favorable decision; the redressability of injury need not be certain.  *Lujan*, 504

U.S. at 560; *Bonnichsen v. United States*, 367 F.3d 864, 873 (9th Cir. 2004).  Here, the FDOC's rule

is the sole impediment to both Ms. Perry's right to practice her religion by writing to inmates and

connecting inmates to willing churches for religious and spiritual guidance, and the rights of those

inmates to receive Ms. Perry's religious teachings.  Accordingly, Ms. Perry's injury will certainly

be redressed by the striking of said Rule.

### II.    Alternatively, Plaintiff Perry also Has Third Party Standing to Assert a RLUIPA Claim on Behalf of the Inmates She Ministers To

 Defendants' secondary argument that Mrs. Perry lacks standing to bring a RLUIPA claim

on behalf of a third party is similarly without merit.  Assuming *arguendo* this court finds Mrs. Perry

has not satisfied the Article III case or controversy requirement for standing, Mrs. Perry submits that

she alternatively has third party standing to raise a RLUIPA claim on behalf of inmates desirous of

being a part of her religious exercise.

Third-party standing issues arise when a party seeks relief by asserting the rights of third

parties not before the court.  Defendants are correct in stating that, generally, parties may seek only

to vindicate their own legal rights rather than those of others.  This presumption against third-party

or *jus tertii* standing rests on prudential principles rather than an application of Article III limitations

on standing. *See United Food & Commercial Workers Union v. Brown Group*, 517 U.S. 544, 557 (1996). In analyzing these prudential limitations on third party standing, the Court has stated three primary concerns:(1) third parties may not wish to have their rights asserted, (2) litigants are less likely to rigorously advocate the rights of others, and (3) the quality of the judicial process may suffer when concrete evidence of harm is not presented by those suffering it. *See Singleton v. Wulff*, 428 U.S. 106, 114-5 (1976); Erwin Chemerinsky, *Federal Jurisdiction*, 83-89 (3d ed. 1999). The Supreme Court has generally allowed third party standing, however, in cases, like the one at bar, where the enforcement of the challenged law or conduct affects third parties indirectly. *See Powers v. Ohio*, 499 U.S. 400 (1991); *Kowalski v. Tesmer*, 125 S. Ct. 564, 567 (2004). The Court has permitted third party standing in such cases where: (1) the litigant has suffered an injury in fact, giving her a sufficiently concrete interest in the outcome of the issue in dispute; (2) the litigant has a close relationship to the third party; and (3) there exists some hindrance to the third party's ability to protect his or her own interests. *Powers*, 499 U.S. at 411.[3] In *Young Apts., Inc. v. Town of Jupiter*, for instance, the Eleventh Circuit recently allowed third party standing after carefully analyzing these three requirements for standing. 529 F.3d 1027, 1041-2 (11th Cir. 2008). In *Young Apts.*, the court stated that an exception to the general limitation against third party standing allows businesses third party standing to advocate, on behalf of their clients and customers, against unconstitutional acts that interfere with that business relationship. *Id*. at 1041. Falling under this same exception, plaintiff Perry clearly meets all three requirements to assert a RLUIPA claim on behalf of the inmates to whom she ministers.

---

[3]As this test has been applied, however, the Court has found standing even in cases in which the second or third prong has not been clearly established.

### A.  Plaintiff Perry Has Suffered an Injury in Fact

This first prong of the test has been rigorously enforced.  Before a plaintiff is allowed to assert a claim on behalf of a third party, that plaintiff must satisfy traditional constitutional standing requirements; the challenged law or conduct must injure the plaintiff in order for that plaintiff to assert the rights or interests of third parties.  These requirements have been found to be satisfied when, for example, a plaintiff challenges a law on behalf of a third party that causes the plaintiff economic harm,[4] or when a criminal defendant challenges jury selection procedures on behalf of improperly excluded jurors.[5]

An injury in fact is an invasion of a legally protected interest, which is concrete and particularized and actual or imminent, not conjectural or hypothetical.  *Lujan, supra*.  Sufficient injury in fact for a plaintiff asserting the rights of third parties has been found, for example, where an environmental group alleged that failure to suspend a rate surcharge would cause its members economic, recreational and aesthetic harm because the rate structure would discourage the use of recyclable materials, thereby adversely affecting the environment by encouraging unwarranted mining and lumbering.  *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 675-76 (1973).  Additionally, a sufficient injury in fact was found when Native Americans were deprived of land they were set to inherit but denied under the Indian Land

---

[4]*See Singleton v. Wulff*, 428 U.S. 106 , 119 (doctor suffers loss of Medicaid reimbursement income).

[5]*See Powers*, 499 U.S. 400, 411 (1991) (discriminatory use of peremptory challenges harms criminal defendant).

Consolidation Act of 1983.  *Hodel v. Irving*, 481 U.S. 704 (1987).

Similarly, sufficient injury in fact was found where an organization asserted that its members had not used, but would use, a river for recreation if the river were not being polluted by Defendants. *Friends of the Earth, Inc. v. Laidlaw Environmental Svcs., Inc.*, 528 U.S. 167, 184 (2000).  In *Friends of the Earth*, Plaintiffs were granted third party standing to bring a citizen suit under the Clean Water Act.  *Id.* at 174.  Standing for this suit has since been widely discussed, noting that "certain classes of plaintiffs suffer injury in fact when [certain federal statutes are] violated, that the violation causes the injury, and that such injury is redressable by the statutory remedies provided." Richard Pierce, *Administrative Law Treatise* § 16.7.  In *Young Apartments*, the Eleventh Circuit similarly found that an owner of an apartment complex had suffered an "injury in fact" giving him a "sufficiently concrete interest" in the outcome of the issue in dispute in order to confer third-party standing upon him to challenge a city housing ordinance in an race-based equal protection claim brought by the owner on behalf of his minority residents.  *Young Apts.*, 529 F.3d at 1041-2.

Here, plaintiff Perry has suffered an injury in fact based on an invasion of her legally protected interest.  Mrs. Perry has an actual, concrete, and legally protected interest in practicing her religion by writing to prisoners, connecting churches to prisoners, and offering her religious services to prisoners.  The Rule imposed by FDOC prohibits inmates from receiving or sending solicitations for any type of pen pals, religious or otherwise.  Mrs. Perry, doing business as "Freedom Through Christ Prison Ministry," is essentially banned by this Rule from carrying out her religious ministry to institutionalized persons.  Prior to the Rule, plaintiff Perry could send and receive solicitations for religious pen pals, but now she can not.

Like the citizen suit in *Friends of the Earth* who sued under the Clean Water Act, Mrs. Perry has suffered an injury in fact, because RLUIPA has been violated and that violation caused the injury to her. *Friends of the Earth*, 528 U.S. at 184. Under RLUIPA, "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution..." 42 U.S.C. § 2000cc-1. The Rule imposed by the FDOC substantially burdens the religious exercise of inmates wishing to receive religious counsel through pen pals and in turn has hindered Mrs. Perry's ministry, thereby causing her an injury that is concrete and actual. The fact that Mrs. Perry's challenge will also serve to benefit the inmates does not divest her of third party standing. For as the Eleventh Circuit found in *Young Apts., Inc.*, "Young Apartments has [third party] standing to allege that it was injured by Jupiter's discriminatory actions, regardless of whether such claims might also vindicate the rights of its immigrant tenants…" *Young Apts.*, 529 F.3d at 1040.

**B.      Plaintiff Perry has a Close Relationship with the Third Party – Institutionalized Persons – to Satisfy Third Party Standing**

A close relationship between the litigant and the third party is needed to satisfy the second prong of third party standing. *See Singleton v. Wulff*, 428 U.S. 106 (1976). In *Singleton*, a sufficiently close relationship was found between a physician and his patients when a physician wanted to assert the rights of his patients in challenging a state statute limiting Medicaid-covered abortions. *Id*. There the Court held that the physician had standing to assert the rights of his patients because the relationship was directly implicated by the law challenged. *Id*. at 117. The Court further reasoned that when seeking an abortion for medical reasons, a woman cannot safely secure one without the aid of a physician. "Aside from the woman herself, therefore, the physician is uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against,

that decision." *Id*.  Mrs. Perry's relationship to prisoners desiring to use her religious services is nearly identical to that of the doctor wanting to assert the rights of his patients.

Third party standing has also been upheld in cases where enforcement of a restriction against the litigant prevents the third party from entering into a relationship with the litigant, to which relationship the third party has a legal entitlement (typically a constitutional entitlement).  *U.S. Dept't of Labor v. Triplett*, 494 U.S. 715, 720 (1990).  Similarly, litigants are allowed to assert the rights of third parties that would be diluted or adversely affected should their constitutional challenge fail and the statute remain in force.  *Craig v. Boren*, 429 U.S. 190, 195 (1976).  Likewise, the Court has permitted booksellers to assert the First Amendment rights of book buyers[6] and sellers of contraceptives to assert the privacy rights of customers.[7]  In *Young Apartments*, the Eleventh Circuit similarly found that the minority landlord had a sufficiently close relationship with his minority tenants to satisfy this prong of third party standing.  529 F.3d at 1043-44.

Here, plaintiff Perry and the third party inmates have a sufficiently close relationship based on her religious pen pal ministry.  Third party standing should be upheld because enforcement of the Rule at issue prevents Mrs. Perry and the inmates from entering into a religious relationship, which is constitutionally and statutorily protected.  *Triplett*, *supra*, at 720.  The Rule also prohibits Mrs. Perry from soliciting inmates and therefore readily identifying other possible litigants.[8]  RLUIPA

---

[6]*Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392 (1988).

[7]*Carey v. Population Serv. Int'l*, 431 U.S. 678, 682-83 (1977); *Eisenstadt v. Baird*, 405 U.S. 438, 443 (1972).

[8]The inability to identify appropriate plaintiffs is one reason to grant third-party standing in a civil rights case.  *Young Apts., Inc.*, 529 F.3d at 1043.

protects the religious exercise of persons confined to an institution.  42 U.S.C. § 2000cc-1(a).  Mrs.

Perry helps those confined persons to find free world persons and churches with whom they can

freely exercise their religion.  Aside from the inmates themselves, the person ministering – Mrs.

Perry – is uniquely qualified to litigate the constitutionality of the government's interference with

that free exercise.  Further, Mrs. Perry's and the inmates' interests are "inextricably bound," because

the challenged Rule injures Mrs. Perry's ability to minister to prisoners and denies inmates access

to seek out her ministry.  *See Singleton*, 428 U.S. at 114-15.  Because plaintiff Perry and the third

party inmates have a close and constitutionally protected relationship that the Rule at bar censors,

Mrs. Perry has satisfied the second requirement for third party standing.

### C.  The Third Party Inmates are Unlikely to Assert Their Own Interests

The Supreme Court frequently permits third party standing when the third party is unlikely

to assert its own interests.  *See Powers v. Ohio*, 499 U.S. 400 (1991).  In *Powers*, the litigant was a

criminal defendant who appealed his conviction on the ground that the prosecutor had used

discriminatory peremptory challenges during *voir dire*.  *Powers*, 499 U.S. at 400.  The Court held

that the discriminatory use of peremptory challenges did cause the litigant injury in fact, because it

could have played a role in his conviction.  *Id.* at 411-12.  The Court also found that the relationship

between the third party jurors and the litigant was close enough due to the *voir dire* process and the

trust established with the jurors.  *Id.* at 413.  Lastly, the Court held that the third prong of the third

party standing test was also met, because even though the third party jurors had the ability to bring

a claim, it was unlikely that the jurors would assert the claims themselves, because of the high costs

and low benefits of such an action.  *Id.* at 415.  Addressing another of the concerns of third party

standing, the Court noted that the litigant was likely to advocate vigorously on behalf of the excluded

jurors in order to secure a reversal of his conviction.  *Id*. at 413.

Similarly, the *Singleton* Court found that the potential women plaintiffs, who were seeking medically related abortions, were unlikely to assert their own rights in court.  *Singleton*, 428 U.S. at 117.  The court noted several reasons why these potential plaintiffs would avoid litigating the issue despite their ability to bring a claim, including their desire to protect their privacy from the publicity of a court suit and the technical mootness of any one individual's claim who underwent the abortion before suit.  *Id.* at 117-8.

Similar to the litigants in *Powers* and *Singleton*, Mrs. Perry is highly likely to advocate rigorously on behalf of the inmates in order to continue her prison ministry and protect their free religious exercise.[9]  Here, the prisoners are hesitant to bring claims due to fear of retaliation and stigmatization, or the threat of disciplinary action.  *See Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956-57 (1984) (holding that a fund raising organization had third party standing to challenge a statute, on behalf of a charity, when the statute's "very existence may cause others not before the court to refrain from constitutionally protected speech or expression.").  Indeed, the challenged Rule itself provides for punishment of any inmate who solicits a religious pen

---

[9]"When the third-party plaintiff seeks to vindicate First Amendment rights, the Supreme Court has further relaxed the requirement that the plaintiff show some obstacle to the first party's ability to bring his own claim.  *See Secretary of State of Md. v. Joseph H. Munson Co.,* 467 U.S. 947, 956, 81 L. Ed. 2d 786, 104 S. Ct. 2839 (1984).  Understanding that some parties who could challenge a statute on First Amendment grounds may choose to forgo litigation to avoid the risk of punishment or retribution, the Court has allowed third parties to bring claims "without regard to the ability of the other to assert his own claims." *Id.* at 957."  *Massey v. Wheeler*, 221 F.3d1030  (7th Cir. 2000)(widow of a death row inmate brought a RLUIPA claim on behalf of her deceased husband, but the court dismissed the case on substantive grounds before reaching a decision on her standing under RLUIPA).

pal through plaintiff Perry's ministry.  Additionally, the interest of Mrs. Perry and the third party inmates are the same, to continue the religious ministry through pen pal correspondence and have the Rule at issue enjoined.

Defendant's Motion to Dismiss cites *Williams v. U.S. Dep't. of Justice* for the proposition that plaintiff Perry lacks standing to bring a RLUIPA claim on behalf of any non-party inmate. (Def.'s Motion, D.E. 28 at 5-6).  In *Williams*, a district court in Kansas held that a *pro se* mother did not have standing to assert civil rights actions on behalf of her institutionalized sons.  *Williams*, Civil Action No. 08-2631-KHV, 2009 WL 1313253, *2 (D. Kan. 2009).  However, the court dismissed the *pro se* mother's claim for lack of standing because she did not allege that the government had substantially burdened <u>her</u> free exercise of religion.  The *pro se* Plaintiff in *Williams* did not assert proper third party standing, because the litigant never fulfilled the first prong of the test, injury in fact.  Here, plaintiff Perry has satisfied all three prongs of the third party standing test and has had her free exercise of religion burdened by Defendants's conduct, thereby distinguishing Mrs. Perry from the litigant in *Williams*.

In conclusion, based on the foregoing arguments, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss and order Defendants to file an answer.

Respectfully submitted,

Shawn A. Heller, Esq.
Fla. Bar No. 46346
Randall C. Berg, Jr., Esq.
Fla. Bar No. 0318371
Joshua A. Glickman, Esq.
Fla. Bar No. 43994

Florida Justice Institute, Inc.

100 S.E. 2nd Street
3750 Bank of America Tower
Miami, Florida 33131-2309
305-358-2081
305-358-0910 (FAX)
E-mail: *SHeller@FloridaJusticeInstitute.org*

Attorneys for the Plaintiff

By: *s/ Randall C. Berg, Jr.*
         Randall C. Berg, Jr., Esq.
         Florida Bar No. 318371
         Trial Counsel

On the Response:

Ms. Nicole Brisbane
Florida Bar Foundation Public Interest Law Fellow
Candidate for Juris Doctor 2010
Emory University School of Law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 24, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      *s/Randall C. Berg, Jr.*
      Randall C. Berg, Jr.

## SERVICE LIST

**Case No. 3:09-cv-403-J-34 JRK**

**Middle District of Florida, Jacksonville Division**

**Served via CM/ECF**

Joe Belitzky
Office of the Attorney General
PL-01 - The Capitol
400 S Monroe St
Tallahassee , FL 32399
850/414-3669
Fax: 856/488-4872
Email: joe_belitzky@oag.state.fl.us

Shelly L. Marks
Assistant Attorney General
Corrections Litigation Bureau
Office of the Attorney General
State of Florida
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3647
Email:  Shelly.Marks@myfloridalegal.com