**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Jacksonville Division**

**Case No. 3:09-cv-403-J-34 JRK**

| | |
|---|---|
| JOY PERRY, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BARRY REDDISH, *et al*., | ) |
| | ) |
| Defendants. | ) |
| ——————————————— | ) |

**<u>SECOND AMENDED COMPLAINT</u>**

**Introduction**

Plaintiff, Joy Perry, doing business as "Freedom Through Christ Prison Ministry" and "Prison Pen Pals," and plaintiff, WriteAPrisoner.com, Inc., bring this lawsuit pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA"), and the Florida Religious Freedom Restoration Act of 1998 (hereinafter "FRFRA") to enjoin defendant officials of the Florida Department of Corrections (hereinafter "FDOC") from banning, in violation of the First and Fourteenth Amendments to the U.S. Constitution, RLUIPA and FRFRA, the receipt by inmates of Plaintiffs' written materials pertaining to the posting of solicitations for religious pen pals and pen pals for other lawful purposes, from censoring inmates who write the Plaintiffs desirous of using their services to solicit religious pen pals and pen pals for other lawful purposes, and from substantially

- 1 -

burdening Mrs. Perry's prison ministry program and making it impossible to carry out her ministry and religious calling; and to require FDOC to provide Plaintiffs with the constitutionally required process necessary to obtain approval to be allowed to send inmates written materials pertaining to the posting of solicitations of pen pals for lawful purposes, as well as an opportunity to be heard and/or protest the decision when such approval is denied and/or when Plaintiffs' written correspondence is rejected by the FDOC and returned to Plaintiffs.

Plaintiffs also seek to enjoin the FDOC from threatening to subject inmates to disciplinary action who post pen pal solicitations through Plaintiffs' pen pal services because such punishment has infringed on Plaintiffs' services, has caused Plaintiffs extra expense and to lose revenue, and in the case of plaintiff Perry, has infringed on and unduly burdened her prison ministry to inmates.  Plaintiffs also seek a declaratory judgment that Rule § 33-210.101(9), F.A.C., is unconstitutional, on its face and as applied, because it is used by Defendants to justify the prohibition of the Plaintiffs from sending literature regarding their services to inmates, is used to ban the receipt of and sending of mail to post solicitations for religious pen pals and for pen pals for other lawful purposes which has adversely affected the Plaintiffs' respective services to Florida's inmates, and fails to provide Plaintiffs with the constitutionally required process necessary to obtain approval to be allowed to send inmates written materials pertaining to the posting of solicitations of pen pals for lawful purposes, as well as an opportunity to be heard and/or protest the decision when such approval is denied

and/or when Plaintiffs' written correspondence is rejected by the FDOC and returned to Plaintiffs.

## <u>Jurisdiction and Venue</u>

1.     Jurisdiction of this Court is invoked under 28 U.S.C. § 1331 (federal question), as this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3)(civil rights), as this action seeks redress for civil rights violations under 42 U.S.C. § 1983.

2.     Plaintiffs' claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to the Plaintiffs by the First, Fifth, and Fourteenth Amendments to the U.S. Constitution and laws of the United States.

3.     Plaintiff Perry's claim for relief in Count III is predicated upon the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq*., which authorizes actions to redress the deprivation of freedom of religion by governmental entities to institutionalized persons.

4.     Plaintiff Perry's claim for relief in Count IV is predicated upon the Florida Religious Freedom Restoration Act of 1998, Chapter 761, Florida Statutes, which authorizes actions to redress the deprivation of freedom of religion by governmental entities.

5.     This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

6.      Plaintiff Perry further invokes the Supplemental Jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein in Count Four. Supplemental Jurisdiction of the Court is invoked with respect to Count Four of this Amended Complaint because all Counts derive from a common nucleus of operative facts, the claims of plaintiff Perry are so interrelated that plaintiff Perry would ordinarily be expected to try them in one judicial proceeding, and considerations of judicial economy, convenience and fairness to the litigants indicate the Court should exercise discretion to hear the Supplemental Jurisdictional claim.

7.      Plaintiffs' claim for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to RLUIPA, FRFRA, and 42 U.S.C. § 1983.

8.      Venue properly lies in this division of the Middle District of Florida pursuant to Local Rule 1.02, M.D. Fla., and 28 U.S.C. § 1391. Defendants Hicks and Bryant reside in this division of the Middle District of Florida and "a substantial part of the events or omissions giving rise to the claim" occurred in this division of the Middle District of Florida.

9.      Plaintiffs seek temporary, preliminary and permanent injunctive relief pursuant to Rule 65, Federal Rules of Civil Procedure.

**Parties**

10.     Plaintiff, Joy Perry, is a resident of Ft. Lauderdale, Florida. Plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry" and "Prison Pen Pals," operates

respectively a non-profit pen pal prison ministry service and a non-profit, secular pen pal service.

11.    Plaintiff, WriteAPrisoner.com, an active Florida corporation, is based in Edgewater, Florida.  WriteAPrisoner.com is a web based company which serves both non-inmates and inmates nationwide, including those in the FDOC, desiring to solicit pen pals for religious, and any other secular and lawful purposes.

12.    Defendant, Barry Reddish, is the Warden of Union Correctional Institution, located in Raiford, Florida, in Union County, within the division and district of this Court. Union Correctional Institution confines a large number of male inmates who have sought and been prohibited by defendant Hicks from soliciting for pen pals through Plaintiffs' services pursuant to Rule § 33-210.101(9), F.A.C.  Defendant Reddish also has authority pursuant to Rule § 33-210.101(9), F.A.C., to punish inmates who have posted such advertisements or have had such advertisements posted with the assistance of a third party.  Defendant Reddish receives federal financial assistance to operate programs and activities.  Defendant Reddish is sued in his official capacity for injunctive and declaratory relief, attorneys' fees and costs.

13.    Defendant, Steven Singer, is the Warden of Florida State Prison, located in Starke, Florida, in Bradford County, within the division and district of this Court.  Florida State Prison confines a large number of male inmates who have sought and been prohibited by defendant Bryant from soliciting for pen pals through Plaintiffs' services pursuant to Rule § 33-210.101(9), F.A.C.  Defendant Singer also has authority pursuant to Rule § 33-210.101(9), F.A.C., to punish inmates who have posted such advertisements or have had such

- 5 -

advertisements posted with the assistance of a third party.  Defendant Singer receives federal financial assistance to operate programs and activities.  Defendant Singer is sued in his official capacity for injunctive and declaratory relief, attorneys' fees and costs.

14.     Defendant, Kim Southerland, is the Warden of Lowell Correctional Institution, located in Ocala, Florida, in Marion County, within the district of this Court. Lowell Correctional Institution confines a large number of female inmates who have sought and been prohibited by defendant Southerland from soliciting for pen pals through Plaintiffs' services pursuant to Rule § 33-210.101(9), F.A.C.  Defendant Reidl also has authority pursuant to Rule § 33-210.101(9), F.A.C., to punish inmates who have posted such advertisements or have had such advertisements posted with the assistance of a third party. Defendant Southerland receives federal financial assistance to operate programs and activities.  Defendant Southerland is sued in his official capacity for injunctive and declaratory relief, attorneys' fees and costs.

15.     Defendant, Walter A. McNeil, is the Secretary of the FDOC.  Under defendant McNeil's control, the FDOC manages all correctional facilities within the state of Florida. Defendant McNeil has ultimate responsibility for the promulgation and enforcement of all FDOC rules, administrative code provisions, policies and procedures and for the management of the Florida prison system.  As Secretary, he is the highest ranking official of the Florida Department of Corrections and is responsible for the enactment of Rule § 33-210.101(9), F.A.C.  Defendant McNeil receives federal financial assistance to operate

programs and activities.  Defendant McNeil is sued in his official capacity for injunctive relief, declaratory relief, attorneys' fees and costs.

16.     The actions of all Defendants as alleged herein were taken under color of state law.

**Factual Allegations**

17.     Defendant Reddish as the Warden of Union Correctional Institution has as many as 2,172 male inmates in his custody.

18.     Defendant Singer as the Warden of Florida State Prison has as many as 1,460 male inmates in his custody.

19.     Defendant Southerland as the Warden of Lowell Correctional Institution has as many as 1,244 female inmates in his custody.

20.     Defendant McNeil has custody of over 100,000 inmates at any one time throughout Florida.

21.     Many of Defendants' inmates are from out of state or out of the country, and are often hundreds, if not thousands, of miles from family and friends.  Even inmates from Florida are often housed in remote, rural prisons, and not accessible by public transportation. Many inmates have elderly or disabled family members who cannot travel to visit.  Some inmates have family members who are illiterate and cannot write.  Many inmates have family and friends who cannot afford to travel long distances to visit.  Inmate visitation rules and regulations are extremely strict, and visitation hours and days are limited.  Visitation days

may conflict with work.  Some prisons do not allow for contact visits.  And, if an inmate is in confinement, visitation may not even be allowed.

22.     As a result of these and other factors, many inmates lose contact with or are abandoned by families and friends while incarcerated.  Consequently, many of these lonely and forgotten inmates attempt to make and establish new friendships in the free world.  The process of forging new friendships in the free world from within prison walls has historically been done through pen pal relationships.

23.     Pen pal relationships help inmates combat the loneliness and idleness that plague prison life.  Many inmates learn to write and express their feelings, often for the first time in their life, as a result of pen pal relationships.  These pen pal relationships help prisoners cope with prison life while incarcerated and also assist in their transition back into society upon release.  Some are able to establish sincere religious beliefs through pen pals.  Many find that a religious experience with a pen pal plays an integral role in their rehabilitation and transition.  Churches, synagogues, and other religious groups have a long history of helping inmates through pen pals services to further their ministry.  Some inmates are able to find housing and employment through a pen pal which can help them get established upon their release.  But locating a pen pal to correspond with can be very difficult.

24.     Unlike the federal Bureau of Prisons, Defendants and the FDOC prohibit inmates from using email.  While the FDOC does allow most inmates who are not in some sort of close confinement to use a collect-call-only telephone system, the cost of a collect call

is prohibitive for most families, the greater majority of whom are indigent.  Inmates are also limited to only having ten (10) approved persons at a time on their phone list.  As a result of the lack of email and the prohibitive cost of using a collect-call-only telephone system, the posting of solicitations for pen pals such as those offered by the Plaintiffs are the only way for FDOC inmates to establish important pen pal relationships.

25.    "Freedom Through Christ Prison Ministry" allows free world persons and churches to provide religious counsel and fellowship to inmates seeking religious guidance through pen pal correspondence.  "Freedom Through Christ Prison Ministry" was established in 1980 by Joy Perry and operates nationwide.  It is entirely funded by Mrs. Perry's church, private contributions, and Mrs. Perry personally.   "Freedom Through Christ Prison Ministry's" stated purpose is to help free world persons and churches reach thousands of lonely prisoners who desire to hear and learn about the Gospel of Christ without leaving one's home, through the exchange of letters.  Plaintiff Perry, upon receiving a letter directed to "Freedom Through Christ Prison Ministry" from a prisoner seeking a religiously oriented pen pal, will send a letter to the inmate containing information about writing to a free world person, and include a list of persons and churches who have agreed to be a pen pal with an inmate seeking a religiously oriented pen pal.  Similarly, when Mrs. Perry receives word from a free world person or church that they are interested in spreading the Gospel of Christ to inmates, she sends the free world person or church information on the "do's and don'ts" when writing prisoners and she includes their mailing addresses on her correspondence to the

inmate.  There is no charge to either the inmate or the church for the service and ministry she provides.

26.     The services, including, but not limited to, ministering and religious counseling, provided by plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," is conduct that her religion requires.

27.     "Prison Pen Pals" operates identically to that of "Freedom Through Christ Prison Ministry."  It was founded in 1975 by a gentleman who is now deceased.  Mrs. Perry began working with this gentleman on "Prison Pen Pals."   After his death, Mrs. Perry maintained it and has continued to operate it nationwide ever since.  However, it is secular in nature, and operates to match inmates in need of a pen pal with free world persons, and vice-versa.

28.     Inmate listings sent to those persons in the free world interested in providing religious counsel and/or written companionship to inmates through "Freedom Through Christ Prison Ministry" and "Prison Pen Pals" clearly indicate by their trade names that the person seeking a pen pal relationship is an inmate, and all listings contain information about the inmate including at a minimum the inmate's place of incarceration and identification number.

29.     Plaintiff, WriteAPrisoner.com, allows inmates throughout the nation, including those in the FDOC, for forty dollars ($40.00) per year, to place personal ads and seek pen pals on the Internet.   This annual fee also includes printing out any email correspondence received by WriteAPrisoner.com on behalf of any prisoner, and mailing any such correspondence twice a month to the inmate via the U.S. Postal Service.

WriteAPrisoner.com provides a service to those persons in the free world who desire to write to and have a pen pal relationship with an inmate.  WriteAPrisoner.com also assists prisoners to successfully re-enter society upon their release by allowing inmates soon to be released to post, without charge, their resume on the Internet so that they might find work after their release.  <u>See</u>:  www.writeaprisoner.com/back-to-work.   WriteAPrisoner.com explicitly prohibits minors from participating in its correspondence services with inmates and takes active steps through the use of Internet age verification services to prevent such use. WriteAPrisoner.com also does not tolerate any inmates who solicit or participate in any type of con artist games, or any other unlawful activities.

30.    Inmate solicitations or requests on WriteAPrisoner.com clearly indicate – by virtue of its name if nothing else — that the person placing the solicitation for a pen pal is a prisoner, and all requests for pen pals contain information about the inmate, including the crime for which the inmate is incarcerated, the inmate's expected date of release, and whether the inmate is seeking donations.  WriteAPrisoner.com also provides the respective state's official Department of Correction's link on every single inmate's request for pen pals. This is to allow the prospective free world pen-pal to observe official rules/warnings about pen pals and to verify whatever information the inmate has posted.   For example, WriteAPrisoner.com verifies FDOC inmate information before it is placed online for each Florida inmate placing a solicitation for a pen pal.

31.     Prior to the adoption of Rule § 33-210.101(9), F.A.C., Plaintiffs had marketed their services to, and received and hosted solicitations for pen pals from FDOC inmates without any incident whatsoever.

32.     Rule 33-210.101(9), F.A.C., provides:

> (9) Inmates shall not use correspondence privileges to solicit or otherwise commercially advertise for money, goods or services.  For the purposes of this rule this includes advertising for pen pals; inmates are not prohibited from corresponding with pen pals, but shall not place ads soliciting pen pals. Inmates who post ads or have ads posted with the assistance of another person shall be subject to disciplinary action.

33.     Defendants, by enacting and enforcing Rule § 33-210.101(9), F.A.C., have caused substantial harm to the Plaintiffs.  The effect of Rule § 33-210.101(9), F.A.C., is to deny Plaintiffs their right to communicate with current and potential inmate subscribers and to deny potential inmate subscribers their right to receive and read Plaintiffs' marketing services, correspondence, and requests for pen pals.  This rule substantially chills Plaintiffs' ability to communicate with their current and potential inmate subscribers and violates Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments.

34.     Since the adoption of Rule § 33-210.101(9), F.A.C., plaintiff Perry has often been unable to receive requests from FDOC inmates seeking pen pals and has been unable to market her services to FDOC inmates when those materials or correspondence are delivered in an envelope with the return address as "Prison Pen Pals."

35.     Rule § 33-210.101(9), F.A.C., has directly impacted and substantially burdened non-inmate membership and churches by infringing on their and plaintiff Perry's ability to locate inmates who would like to hear and learn the Gospel according to Jesus

Christ and to minister to and participate in religious counseling to inmates.  Similarly, Rule §
33-210.101(9), F.A.C., substantially burdens the religious exercise of inmates by denying
them the opportunity to receive religious counsel from non-inmate correspondents who
would otherwise be able to participate in plaintiff Perry's "Freedom Through Christ Prison
Ministry."

36.    Since the adoption of Rule § 33-210.101(9), F.A.C., plaintiff, WriteA-
Prisoner.com, has been unable to receive requests from FDOC inmates seeking pen pals and
has been unable to market its services to and correspond with FDOC inmates.
Correspondence consisting of marketing its services to FDOC inmates is returned to plaintiff
WriteAPrisoner.com by defendants Reddish, Southerland, and Singer, and other correctional
facilities under the control of defendant McNeil.

37.    Since the adoption of Rule § 33-210.101(9), F.A.C., plaintiff, WriteA-
Prisoner.com has been unable to notify Florida inmates that it will post their resumes on the
internet for possible future employment when released from custody.  Correspondence to
Florida consisting of allowing the free posting of resumes on the internet is returned to
plaintiff WriteAPrisoner.com by defendants Reddish, Southerland, and Singer and other
correctional facilities under the control of defendant McNeil.

38.    Since the adoption of Rule § 33-210.101(9), F.A.C., several FDOC inmates
have written plaintiff WriteAPrisoner.com requesting their solicitation for pen pals be
removed from the Internet as they have been subject to disciplinary action or threatened to

disciplinary action by the Defendants for posting such solicitations or having had such requests posted with the assistance of a third party.

39.     Since the adoption of Rule § 33-210.101(9), F.A.C., plaintiff, WriteA-Prisoner.com, has lost a considerable amount of revenue from FDOC inmates and its mission to assist inmates in finding employment just prior to their release by posting their resumes on the internet has been stopped.

40.     Since the adoption of Rule § 33-210.101(9), F.A.C., another pen pal service – "Christian Pen Pals," which also operates under the name "Pen Pal Connection" – has been approved by Defendants pursuant to Rule § 33-210.101(9), F.A.C., to market its services to, and correspond with, FDOC inmates.

41.     "Christian Pen Pals" or "Pen Pal Connection" are operated by an individual named Elizabeth Michaels, and, like plaintiff Perry, seek to connect free world Christians to inmates for religious counseling and guidance.

42.     Since Defendants' approval of "Christian Pen Pals" or "Pen Pal Connection" as an approved pen pal service pursuant to Rule § 33-210.101(9), F.A.C., Defendants have actively taken steps to ensure that its correspondence is allowed into FDOC institutions when it is improperly impounded pursuant to Rule § 33-210.101(9), F.A.C.

43.     Since the adoption of Rule § 33-210.101(9), F.A.C., and despite Defendants' approval of "Christian Pen Pals" or "Pen Pal Connection" as an approved pen pal service pursuant to Rule § 33-210.101(9), F.A.C., no such approval process has been provided for or is codified in the text of Rule § 33-210.101(9), F.A.C.

14

44.     Since the adoption of Rule § 33-210.101(9), F.A.C., Defendants have failed and refused to provide Plaintiffs with notice of the process to become an approved pen pal service pursuant to Rule § 33-210.101(9), F.A.C.

45.     Since the adoption of Rule § 33-210.101(9), F.A.C., Defendants have failed and refused to provide Plaintiffs with an opportunity to be heard and/or protest the decision when written correspondence sent by Plaintiffs to FDOC inmates is rejected by Defendants and returned to Plaintiffs.

46.     There is not a valid, rational connection between Rule § 33-210.101(9), F.A.C., and any legitimate governmental interest put forward to attempt to justify it.

47.     There are no alternative means of exercising the right to receive and solicit pen  pals that remain open to Florida's prison inmates as a result of the prohibitions set forth in Rule § 33-210.101(9), F.A.C.

48.     Defendants' accommodation of Plaintiffs' constitutional right to solicit pen pals from and for inmates will not impact on correctional officers, other inmates, or the allocation of prison resources generally.   Indeed, the impact of free world persons and churches having to instead visit inmates at the correctional facility has a far greater impact on the allocation of staff resources than allowing the solicitation of prison pen pals.

49.     There are many ready alternatives to Rule § 33-210.101(9), F.A.C.   For example, if the solicitation of pen pals results in any fraudulent activity, there are other FDOC rules which prohibit fraud.   If the solicitation of pen pals results in any purported security concern, there are FDOC rules which can be used to prosecute such activity.

### Count I

### Unconstitutional Censorship of Plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry" and "Prison Pen Pals"

50.     Plaintiff Perry hereby incorporates by reference all allegations contained in ¶¶ 1 through 49 of this Amended Complaint, as if set forth fully herein.

51.     Plaintiff, Joy Perry, doing business as "Freedom Through Christ Prison Ministry" and "Prison Pen Pals," allows inmates throughout the nation, including those in Defendants' custody, at no cost, to correspond with pen pals; this behavior enjoys protection under the First and Fourteenth Amendments.

52.     Defendant officials' actions in denying plaintiff Perry, doing business as "Freedom Through Christ Prison Ministries" and "Prison Pen Pals'," her ability to communicate with inmates seeking  religious counsel and friendship, and in denying inmate subscribers their right to receive and read information from  "Freedom Through Christ Prison Ministries" and "Prison Pen Pals," violate plaintiff Joy Perry's right of free speech, press and association as protected by the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

### Count II

### Unconstitutional Censorship of WriteAPrisoner.com

53.     Plaintiff WriteAPrisoner.com hereby incorporates by reference all allegations contained in ¶¶ 1 through 49 of this Amended Complaint, as if set forth fully herein.

16

54.     Plaintiff, WriteAPrisoner.com, allows inmates throughout the nation, including those in Defendants' custody, to correspond with pen pals; this behavior enjoys protection under the First and Fourteenth Amendments.

55.     Defendants' actions in denying plaintiff WriteAPrisoner.com its right to communicate with its current and potential inmate subscribers, and in denying inmate subscribers their right to receive and read plaintiff WriteAPrisoner.com's correspondence, violate plaintiff WriteAPrisoner.com's right of free speech, press and association as protected by the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

<u>**Count III**</u>

<u>**Violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA)**</u>

56.     Plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," hereby incorporates by reference all allegations contained in ¶¶ 1 through 49 of this Amended Complaint, as if set forth fully herein.

57.     The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1)   is in furtherance of a compelling governmental interest; and
> (2)   is the least restrictive means of furthering that compelling governmental interest.

58.     Plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," allows inmates throughout the nation, including those in Defendants' custody, at no cost, to request for and correspond with religious pen pals; this behavior enjoys protection under the First and Fourteenth Amendments to the U.S. Constitution and the RLUIPA.

59.     Plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," provides a service to herself and those persons in the free world who desire to write to and have a religious pen pal relationship with a prison inmate.  "Freedom Through Christ Prison Ministry" additionally allows free world persons of faith and plaintiff Perry to find inmates to minister to; these behaviors enjoy protection under the First and Fourteenth Amendments and the RLUIPA.

60.     Defendant officials' actions in denying "Freedom Through Christ Prison Ministry" and its free world membership their right to minister to inmates and to connect inmates to free world correspondents for religious counseling unlawfully imposes a substantial burden on the free exercise of plaintiff Joy Perry, doing business as "Freedom Through Christ Prison Ministry," and its membership, in violation of rights protected by the RLUIPA.

61.     Rule § 33-210.101(9), F.A.C., substantially chills plaintiff Perry's "Freedom Through Christ Prison Ministry's" ability to minister to those inmates desiring to hear the Gospel, chills the inmates' right to hear and participate in plaintiff Perry's prison ministry, and therefore violates RLUIPA and the First and Fourteenth Amendments.

18

62.     Defendant Officials' actions in denying plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," and its non-inmate membership, their right to minister to inmates and to connect inmates to non-inmate correspondents for religious counseling, and in denying FDOC inmate subscribers their right to communicate with non-inmates offering religious counsel and kinship, do not further a compelling governmental interest.

63.     The substantial burden Defendants have imposed on Plaintiffs' religious exercise is imposed on a program or activity operated by the Defendants that receives federal financial assistance.

## Count IV

## Violation of the Florida Religious Freedom Restoration Act of 1998 (FRFRA)

64.     Plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," hereby incorporates by reference all allegations contained in ¶¶ 1 through 49 of this Amended Complaint, as if set forth fully herein.

65.     The Florida Religious Freedom Restoration Act of 1998, Florida Statutes § 761.03 provides:

(1)  The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:

(a)  Is in furtherance of a compelling governmental interest; and
(b)  Is the least restrictive means of furthering that compelling governmental interest.

19

(2)  A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.

66.     Plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," allows inmates throughout the nation, including those in Defendants' custody, at no cost, to request for and correspond with religious pen pals; this behavior enjoys protection under the FRFRA.

67.     Plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," provides a service to herself and those persons in the free world who desire to write to and have a religious pen pal relationship with a prison inmate.  "Freedom Through Christ Prison Ministry" additionally allows free world persons of faith and plaintiff Perry to find inmates to minister to and these behaviors enjoy protection under the FRFRA.

68.     Defendant officials' actions in denying "Freedom Through Christ Prison Ministry" and its free world membership their right to minister to inmates and to connect inmates to free world correspondents for religious counseling unlawfully imposes a substantial burden on the free exercise of plaintiff Joy Perry, doing business as "Freedom Through Christ Prison Ministry," and its membership, in violation of rights protected by the FRFRA.

69.     Rule § 33-210.101(9), F.A.C., substantially chills plaintiff Perry's "Freedom Through Christ Prison Ministry's" ability to minister to those inmates desiring to hear the Gospel, chills the inmates' right to hear and participate in plaintiff Perry's prison ministry, and therefore violates the FRFRA.

70.     Rule § 33-210.101(9), F.A.C. and defendant officials' actions forbid plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," from engaging in conduct, including, but not limited to, ministering and religious counseling, which her religion requires, and is more than an inconvenience on her religious exercise .

71.     Defendant officials' actions in denying plaintiff Perry, doing business as "Freedom Through Christ Prison Ministry," and its non-inmate membership, their right to minister to inmates and to connect inmates to non-inmate correspondents for religious counseling, and in denying FDOC inmate subscribers their right to communicate with non-inmates offering religious counsel and kinship, do not further a compelling governmental interest.

## Count V

## Violation of Due Process

72.     Plaintiffs hereby incorporate by reference all allegations contained in ¶¶ 1 through 49 of this Amended Complaint, as if set forth fully herein.

73.     Defendant officials, in denying Plaintiffs their right to communicate with their current and potential inmate correspondents, have deprived Plaintiffs of constitutionally protected liberty and/or property interests without due process of law.

74.     Defendant officials' actions, as alleged herein, constitute state action.

75.     Defendant officials' failure to provide Plaintiffs with the constitutionally required process necessary to obtain approval to be allowed to send inmates written materials pertaining to the posting of solicitations of pen pals for lawful purposes, failure to provide

Plaintiffs with an opportunity to be heard and/or protest the decision when such approval is denied, and failure and refusal to provide Plaintiffs with an opportunity to be heard and/or protest the decision when Plaintiffs' correspondence and written materials are rejected by the FDOC and returned to Plaintiffs, violates Plaintiffs' rights to due process of law protected by the Fifth and Fourteenth Amendments to the U.S. Constitution and by 42 U.S.C. § 1983.

### Request for Relief

**WHEREFORE** Plaintiffs respectfully request that this Court grant the following relief:

(a)     declare that the conduct of the Defendants violates Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution;

(b)     declare that the conduct of the Defendants violates plaintiff Perry's rights, doing business as "Freedom Through Christ Prison Ministry," under the Religious Land Use and Institutionalized Persons Act;

(c)     declare that the conduct of the Defendants violates plaintiff Perry's rights, doing business as "Freedom Through Christ Prison Ministry," under Florida's Religious Freedom Restoration Act of 1998;

(d)     declare that Rule § 33-210.101(9), F.A.C., violates Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution;

(e)     enter temporary, preliminary, and permanent injunctive relief that Rule § 33-210.101(9), F.A.C., is unconstitutional as written and as applied, and requiring defendant

McNeil, his successor in office, and his servants, agents and employees, and those acting in concert with him, to immediately rescind Rule § 33-210.101(9), F.A.C.;

(f)      award Plaintiffs their costs and attorneys' fees arising out of this litigation, pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000cc. *et seq*., and Florida Statutes §  761.04 ; and

(g)      grant Plaintiffs such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

**Florida Justice Institute, Inc.**

 s/ *Randall C. Berg, Jr.*
Randall C. Berg, Jr.
Florida Bar Number 318371
rberg@FloridaJusticeInstitute.org
Joshua A. Glickman
Florida Bar Number 43994
jglickman@FloridaJusticeInstitute.org
Shawn A. Heller
Florida Bar Number 46346
sheller@FloridaJusticeInstitute.org
3750 Miami Tower
100 S.E. Second Street
Miami, Florida 33131-2309
(305) 358-2081
(305) 358-0910 (facsimile)

Trial Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 21, 2010, the foregoing document was served on all counsel of record or *pro se* parties identified on the following Service List in the manner specified.

 s/ *Randall C. Berg, Jr.*
Randall C. Berg, Jr.

**SERVICE LIST**
**Case No. 3:09-cv-403-J-34 JRK**
**Middle District of Florida, Jacksonville Division**

By CM/ECF:

**Counsel for the Defendants**

Joe Belitzky
Office of the Attorney General
PL-01 - The Capitol
400 S Monroe St
Tallahassee, FL 32399
850/414-3669
Fax: 856/488-4872
Email: joe_belitzky@oag.state.fl.us

Shelly Marks
Lance Eric Neff
Office of the Attorney General
PL-01 - The Capitol
400 S Monroe St
Tallahassee, FL 32399
850-414-3300
Fax: 850-488-4872
Email: Shelly.Marks@myfloridalegal.com
Email: Lance.Neff@myfloridalegal.com